IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JUSTIN BORUM, and CHELSEA RUSHING, individually and as heirs-at-law to the ESTATE OF TERRY BORUM, and GRADY BORUM § § § § § | | |
| PLAINTIFFS § § | | |
| § | CAUSE OF ACTION NO. | |
| v. § | 2:14-cv-127 | |
| § | | |
| SWISHER COUNTY § | JURY DEMANDED | |
| § | | |
| DEFENDANTS § | | |

**PLAINTIFFS' COMPLAINT**

Plaintiffs Justin Borum, Grady Borum and Chelsea Rushing bring this lawsuit against Defendant Swisher County because its policies and policymakers caused the death of their beloved father and son, Terry Lynn Borum.

**STATEMENT OF CLAIMS**

1. Plaintiffs Justin Borum, Grady Borum, and Chelsea Rushing bring this civil action for compensatory damages against Swisher County for failing to provide adequate medical care, basic nutrition and safe conditions of confinement to their father, Terry Borum, during his brief incarceration at the Swisher County Jail.

2. Plaintiffs also claim that Swisher County, acting through its agents and servants, discriminated against Mr. Borum due to his obvious mental illness, physical impairments, and alcoholism, resulting in his death. As such, the County violated Mr. Borum's rights under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131) and Rehabilitation Act (29 U.S.C. § 794), which require public facilities, like the county jail, to be accessible to people with disabilities, like Mr. Borum.

1

3. Swisher County also had a longstanding policy, practice, and custom of failing to adequately staff the jail, and failing to provide appropriate health care to sick prisoners. Thus, Plaintiffs bring suit under 42 U.S.C. § 1983 for violating of Mr. Borum's Fourteenth Amendment rights, and for causing his death.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and § 1343 (civil rights).

5. Venue is proper in this district pursuant to 24 U.S.C. § 1391(b), as the events complained of occurred in this district and division.

## PARTIES

6. Justin Borum is the surviving son of Terry Borum. He is a resident of Swisher County, Texas.

7. Chelsea Rushing is the surviving daughter of Terry Borum. She is a resident of Hale County, Texas.

8. Grady Borum is the surviving father of Terry Borum. He is a resident of Swisher County, Texas.

9. At the time of his death, Terry Borum had no surviving spouse or children other than the Plaintiffs. There were no probate proceedings arising from his death, as none were necessary. Terry Borum's last will and testament left his estate to his children, Justin Borum and Chelsea Rushing. Terry Borum was a resident of Swisher County at the time of his death.

10. Swisher County is a political subdivision of the State of Texas. The County funds and operates the jail, employs and compensates the jail staff, and is charged with

ensuring that, at all times, the jail remains in compliance with federal and state law. The County is a recipient of federal funds. The County can be served through the County Judge, Harold Keeter, at 119 South Maxwell, Tulia, TX 79088.

## FACTS

11. Mr. Borum suffered from severe depression. He frequently experienced persistent sadness that interfered with his ability to perform daily tasks, including sleeping. He often could not sleep, and would send text messages to his children in the very early hours of the morning. He had been prescribed antidepressants for a decade before he died.

12. Due to his depression, Mr. Borum was also an alcoholic. His body was physically dependent on alcohol, causing physiological changes to his body. Because of his alcoholism, when he stopped drinking he would be unable to think clearly, and experienced hallucinations, confusion, and disorientation. His alcoholism also prevented him from performing major life activities, such as working and caring for himself.

13. In 2010, because of his depression and alcoholism, Mr. Borum tried to take his own life by shooting himself in the head with a shotgun. The suicide attempt was unsuccessful, but left Mr. Borum permanently disfigured. Large portions of his jaw, tongue, and the left side of his face were destroyed. He was unable to speak clearly, and had to eat a liquid diet using a feeding tube sewn into his stomach.

14. Likewise, his nasal cavity was destroyed, and he had difficulty breathing. He was blind in one eye.

15. Because Mr. Borum lived in the small community of Swisher County, and because of the unusual nature of his suicide attempt, the entire community was aware of

his medical condition, including county elected officials, County Judge Keeter, and the officers at the jail.

16. Despite this tragedy, Mr. Borum's family loved him, and worked to help him recover from his devastating, obvious injuries.

17. Due to his chronic alcoholism, depression, and physical disabilities, Mr. Borum was unable to work, and received Social Security disability benefits.

18. On January 28, 2013, Mr. Borum was arrested on an outstanding warrant and booked into the Swisher County jail as a pre-trial detainee.

19. Though his medical condition and disabilities were obvious, none of the officers at the jail took any step to provide him medical care, or even get him a liquid diet for his feeding tube.

20. When the officer booked Mr. Borum in to the jail, she noted the deformities to his face, his previous suicide attempts, and that he used a feeding tube to eat.

21. Likewise, officers at the jail also knew Mr. Borum suffered from chronic alcoholism, and that he had been drinking earlier on the day he was arrested.

22. The Swisher County jail is very small – it has a maximum capacity of 27 inmates, and may hold as few as six inmates at any time. Because of the jail's small size, the Sheriff and all the jail staff would have been well aware of each inmate who spent more than a few hours in the jail.

23. Because of the jail's small size, each of the officers working there would have known Mr. Borum was not receiving his nutritional supplement through the feeding tube, and that, instead, jailers were only giving him a mixture of honey and orange juice that provided him little to no nutrition.

24. Likewise, each of the officers working at the jail, including the Sheriff, quickly became aware that Mr. Borum was suffering from alcohol withdrawal. The officers, however, only administered the jail's standard treatment for patients experiencing alcohol detoxification: honey and orange juice.

25. This "treatment" would be obviously inadequate to even an incompetent jailer. Despite this, however, it had been the County's policy, practice, and custom for years to treat inmates experiencing alcohol withdrawal with honey and orange juice. Despite the jail's practice, all the jail's staff, including the Sheriff, quickly realized that Mr. Borum could not be housed safely in the jail.

26. The County Commissioners and County Judge Harold Keeter, the county's chief administrator, were aware of these problems, but did nothing to address the recurring problem of treating inmates experiencing alcohol detoxification.

27. Despite the jail's small size, Judge Keeter also consistently failed to adequately staff the jail. On multiple occasions, the Texas Commission on Jail Standards found the jail failed to meet minimum staffing requirements, and that inmates were sometimes left unobserved for hours.

28. In fact, the county only employed four jailers – two people to work each shift. For years, the Commission on Jail Standards had cited the jail for failing to have enough staff to safely supervise detainees in the jail, and failing to meet state minimum requirements. Likewise, the U.S. Department of Labor investigated allegations that employees were required to work long hours without appropriate breaks or overtime pay in violation of federal labor law due to the paltry staffing.

29. Likewise, the Texas Commission on Jail Standards routinely found serious

5

deficiencies in the jail's policies and procedures, including policies related to providing health care to prisoners. The Commission on Jail Standards regularly informed Judge Keeter, the Sheriff, and the Commissioners Court about the serious problems at the jail.

30. The few officers working at the jail were also woefully untrained. Supervisors at the jail had only minimal training, and were told on multiple occasions that they could not attend trainings necessary for them to do their jobs. For example, the jail administrator had no training on providing medical care to prisoners, or accommodating prisoners with mental disabilities, and had not completed basic courses for supervisors in jails. Though the jail administrator asked for additional, minimal training multiple times, his requests were consistently denied by the Sheriff and Judge Keeter.

31. None of the officers at the jail had any training on accommodating prisoners suffering from alcohol withdrawal, though the Sheriff and County Judge knew inmates experiencing "detox" were regularly incarcerated at the jail.

32. On multiple occasions, the Sheriff and jail administrators asked Judge Keeter and the Commissioners for additional resources – including staff and training – to operate the jail. Judge Keeter told them their requests were "Christmas lists" the County would not supply.

33. The sheriff and jail administrator routinely complained to Judge Keeter and the Commissioners Court that they did not have adequate resources to staff the jail or to provide medical care for detainees like Mr. Borum. On information and belief, Keeter and the Commissioners knew that though alcoholics experiencing withdrawal were routinely processed through the jail, they knew the jail provided detainees suffering from

6

alcohol withdrawal honey and orange juice rather than actual medical treatment.

34. As Mr. Borum began to suffer from malnutrition and alcohol withdrawal, his physical and mental condition rapidly deteriorated. Officers reported to the sheriff and jail administrator that Mr. Borum would spend the entire night speaking "to his invisible friend," hallucinating, suffering "DTs," and had to be housed in the "detox cell" due to his increasingly erratic behavior, even after being in the jail for three days. He spent the entire night pounding on the cell door asking to be let out, and trying to "crawl" through the food tray slot in the door.

35. "DTs," or delirium tremens, are a true medical emergency. But officers failed and refused to call for an ambulance because the county's practice and custom was to refuse to treat detainees suffering serious medical problems because when a detainee was admitted to a hospital the County would have to pay for his care. Thus, though officers knew Mr. Borum was experiencing severe alcohol withdrawal and suffering a medical emergency for hours, they did nothing.

36. Recognizing the obvious severity of Mr. Borum's condition, the jail administrator called Judge Keeter and asked for permission to transfer Mr. Borum to another county's jail where appropriate medical care would be available. The Sheriff and jail administrator had already contacted nearby Lubbock County, which would accept Mr. Borum if Swisher County paid Lubbock County just $80 per day to house Mr. Borum. Because the transfer would require Swisher County to sign a contract to pay Lubbock County, however, they needed Judge Keeter's approval.

37. The Sheriff and jail administrator called Judge Keeter and begged him to approve the contract and extremely modest expense. They faxed him a copy of the

contract with Lubbock County for his signature. Judge Keeter knew about Borum's serious medical condition, and that he could not be safely housed in the jail. But rather than approve the extremely modest expense, he forbade the sheriff and jail administrator from transferring Mr. Borum.

38. After three days of not eating and suffering delirium tremens from alcohol withdrawal, shortly after 8:00 a.m. on February 1, 2013, Mr. Borum collapsed in his cell and struck his head. He was knocked unconscious.

39. The jail administrator attended to Mr. Borum, and called 911. EMS arrived shortly, and he was taken to Swisher Memorial Hospital.

40. Mr. Borum arrived at the hospital at approximately 8:30 a.m.

41. He received a CT scan that showed a subdural hematoma.

42. As Mr. Borum needed care that Swisher County Hospital could not provide, he was ordered transferred to Northwest Texas Hospital in Amarillo, about 50 miles away.

43. During this time, Mr. Borum remained in the County's custody.

44. The County operated the only ambulances available in Tulia to take Mr. Borum to Northwest Texas Hospital in Amarillo in Potter County.

45. But the County had a policy, practice, and custom that one ambulance must always be within the County's borders. The County only had two ambulances, one of which, on information and belief, the Commissioners Court knew was inoperable. Thus, due to the County's policy, practice, and custom an ambulance had to be dispatched from Amarillo to Tulia to take Mr. Borum to the Northwest Texas Hospital emergency room, delaying his care by at least an hour. The County's policy thus deliberately delayed life-

8

saving medical care to Mr. Borum.

46. By the time he arrived at Northwest Texas Hospital, neurologists there determined it was too late to save Mr. Borum. Doctors later told his family that if he had made it to Northwest Texas Hospital earlier, they could have done emergency surgery to save him. Tragically, Mr. Borum died at the hospital.

47. The autopsy determined the cause of death was blunt force trauma to the head caused by the fall.

48. Mr. Borum was just 53 years old.

## CAUSES OF ACTION

### I. AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT (AS TO DEFENDANT SWISHER COUNTY)

49. Swisher County has been, and is, a recipient of federal funds, and thus covered by the mandate of the Rehabilitation Act. The Rehabilitation Act requires recipients of federal monies to reasonably accommodate persons with mental and physical disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose. 29 U.S.C. § 794 (2008).

50. Further, Title II of the ADA applies to Swisher County and has the same mandate as the Rehabilitation Act. 42 U.S.C. § 12131 *et seq.* (2008).

51. The Swisher County Jail is a facility, and its operation comprises a program and service, for Rehabilitation Act and ADA purposes.

52. For purposes of the ADA and Rehabilitation Act, Mr. Borum was a qualified individual regarded as having a mental impairment (depression), a physical condition (loss of his left jaw and associated physical deformities), and a medical condition

(alcoholism) that substantially limited one or more of his major life activities. Defendant Swisher County knew Mr. Borum: was experiencing "DTs"/delirium tremens and hallucinations in the jail; used a feeding tube to eat and required a liquid diet and nutritional supplement; suffered from psychiatric problems; and suffered from alcoholism and was physically dependent on alcohol. Despite this knowledge, Swisher County's officers intentionally discriminated against him, under the meaning of the ADA and Rehabilitation Act, by failing and refusing to provide him the liquid diet he required, provide him any medical treatment, or otherwise accommodating his disability to save his life.

53. As alleged above, Swisher County failed and refused to reasonably accommodate Mr. Borum's mental and physical disabilities while in custody, in violation of the ADA and Rehabilitation Act. That failure and refusal caused his death.

54. As alleged above, Swisher County violated the ADA and the Rehab Act as it failed, and refused to reasonably modify its facilities, services, accommodations, and programs to reasonably accommodate Mr. Borum's mental and physical disabilities, including not providing any treatment or accommodation for his alcohol withdrawal, not providing him the liquid diet required for his feeding tube, and not transferring him to the Lubbock Jail where he could have been safely housed. These failures and refusals, which were intentional, proximately caused his death.

55. Mr. Borum died as a direct result of Swisher County's intentional discrimination against him. Accordingly, Plaintiffs are entitled to the maximum amount of compensatory damages allowed by law.

## II. FOURTEENTH AMENDMENT – CONDITIONS OF CONFINEMENT
### (AS TO DEFENDANT SWISHER COUNTY)

56. Swisher County consistently failed to provide adequate resources for the safe operation of the jail. High-ranking County officials, including the Commissioners Court and County Judge, knew that the jail was understaffed, failed to provide medical care to prisoners, and had no policies regarding providing prisoners meaningful access to medical care.

57. The County's policy, practice, and custom was to violate the Fourteenth Amendment rights of prisoners at the jail, like Mr. Borum, by denying them meaningful access to medical care by:

   a. Providing obviously inadequate medical care to prisoners experiencing alcohol withdrawal and/or DTs;

   b. Chronically understaffing the jail, inevitably ensuring inadequate access to medical care;

   c. Failing to train jailers about the known dangers of alcohol withdrawl and DTs;

   d. Failing to supervise Corrections Officers; and

   e. Failing to provide timely emergency transportation to competent hospitals.

58. These conditions were sufficiently well-known and pervasive to constitute policymakers' intended conditions and practices at the Swisher County Jail. These practices and conditions had no legitimate penological purpose.

59. The jail's system of for providing inmates access to medical care was known by County policymakers to be wholly inadequate to treat inmates with serious, chronic medical conditions.

60. Moreover, the County's final policymakers – the Sheriff and County Judge – had actual notice of Mr. Borum's serious medical condition, and actively chose to take no action to provide him access to necessary medical care. The Sheriff and County Judge were deliberately indifferent to Mr. Borum's serious medical needs, and denied him medical care, causing his death. As the County's final policymakers, their deliberate indifference on the County's behalf violated Mr. Borum's Fourteenth Amendment rights, as if it was official county policy to deny Mr. Borum the protections of the Constitution.

61. The County's deliberate indifference to the serious medical needs of its prisoners in the jail, like Mr. Borum, caused him to needlessly suffer and die.

## DAMAGES

62. Plaintiffs are entitled to compensatory and punitive damages against Defendants in the maximum amounts allowed by law.

**63.** More specifically, as the actions and omissions of Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and were the moving force of the wrongful death of Terry Borum, Deceased, Plaintiffs assert claims under 42 U.S.C. § 1983, the ADA and Rehabilitation Act, and the wrongful death and survivorship statutes as specifically pled herein.

64. More particularly, Plaintiffs Justin Borum and Chelsea Rushing in their capacity as heirs-at-law to the Estate of Terry Borum, assert a survival claim on behalf of the estate, which has incurred damages including, but not limited to, the following:

- past physical pain and suffering;
- past mental anguish;
- loss of services;
- funeral and/or burial expenses; and

12

- attorneys' fees and costs pursuant to 42 U.S.C. §1988, 42 U.S.C. §12205, or as allowed by law.

65. Plaintiffs Justin Borum, Chelsea Rushing, and Grady Borum, in their individual capacities asserting wrongful death claims, have incurred damages including, but not limited to, the following:

- past and future mental anguish;
- past and future loss of companionship, society, services, and affection of Terry Borum; and
- attorneys' fees and costs pursuant to 42 U.S.C. §1988, 42 U.S.C. § 12205, or as allowed by law.

## ATTORNEYS' FEES AND COSTS

66. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs against Swisher County. Plaintiffs also request attorneys' fees, costs, and expenses against Swisher County for their ADA and Rehabilitation Act claims, pursuant to 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff requests that the Court:

A.   Award compensatory damages against Defendant Swisher County;

B.   Awards pre-judgment and post-judgment interest at the highest rate available under the law;

C.   Find that Plaintiffs are the prevailing party in this case and award them attorneys' fees, court costs, expert costs, and litigation expenses; and,

D.   Grant such other and further relief as appears reasonable and just, to which Plaintiffs may be entitled.

Dated: May 28, 2014.

Respectfully submitted,


The Edwards Law Firm
The Haehnel Building
1101 E. 11th Street
Austin, Texas 78702
Tel.   512-623-7727
Fax.   512-623-7729


By: /s/ Jeff Edwards
      JEFF EDWARDS
      State Bar No. 24014406
      Scott Medlock
      State Bar No. 24044783
      Sean Flammer
      State Bar No. 24059754

**ATTORNEYS FOR PLAINTIFF**