IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JUSTIN BORUM, and CHELSEA RUSHING, individually and as heirs-at-law to the ESTATE OF TERRY BORUM, and GRADY BORUM,<br><br>Plaintiffs,<br><br>v.<br><br>SWISHER COUNTY,<br><br>Defendant. | § § § § § § § § § § § § § | NO. 2:14-CV-127-J |

## MEMORANDUM OPINION AND ORDER

On June 20, 2014, Defendant filed a *Rule 12(b)(6) Motion to Dismiss with Supporting Brief*. Plaintiffs filed a response on July 18, 2014. Defendant did not file a reply. Defendant's motion is DENIED.

### BACKGROUND

On February 1, 2013, Terry Borum—a fifty-three-year-old pre-trial detainee at the Swisher County jail—collapsed in his cell, struck his head, and was knocked unconscious. Approximately two to three hours later, Mr. Borum died at the Northwest Texas Hospital in Amarillo. According to the autopsy, the cause of death was blunt force trauma to the head, caused by Mr. Borum's fall.

Plaintiffs—the son, daughter, and father of Terry Borum and the heirs-at-law to the Estate of Terry Borum—filed suit in this Court on May 28, 2014 against Defendant Swisher County, Texas. In their complaint, Plaintiffs assert causes of action under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. Plaintiffs also assert a

survival claim and a wrongful death claim, pursuant to § 1983 and the ADA/Rehabilitation Act. In their complaint, Plaintiffs allege the following facts:

Terry Borum suffered from alcoholism and severe depression. In 2010, Mr. Borum's depression and alcohol dependency drove him to attempt to commit suicide with a shotgun. The suicide attempt was unsuccessful and left Mr. Borum permanently disfigured—the shotgun blast destroyed parts of his jaw, tongue, and much of the left side of his face. As a result, Mr. Borum could not speak clearly, had difficulty breathing, and was blind in one eye. He also could not eat solid food and instead required a liquid diet, which was administered through a feeding tube sewn inside his stomach. Mr. Borum's physical deformities, as well as his alcoholism and depression, left him incapable of performing activities such as working and caring for himself. Because Swisher County is a very small community, Mr. Borum's unique medical condition was widely known. Plaintiffs allege that County Judge Harold Keeter and then-County Sheriff Cody Grubb both knew of Mr. Borum's condition.

On January 28, 2013, Mr. Borum was arrested on an outstanding warrant and was detained in the Swisher County jail. The officer who booked Mr. Borum noted his physical deformities, past suicide attempts, and unique feeding requirements. Jail officials were also aware of Mr. Borum's chronic alcoholism. During the course of Mr. Borum's three-plus days in Swisher County jail, he received no medical care of any kind, despite the fact that he began hallucinating, behaved erratically, and was suffering from delirium tremens ("DTs")—a severe form of alcohol withdrawal that causes tremors and other changes to the nervous system. The only food Mr. Borum received during his three days of confinement was a mixture of honey and orange juice, which was the County's standard method of "treating" inmates experiencing

2

alcohol withdrawal. The County never provided Mr. Borum with the type of liquid diet necessitated by his disability and feeding tube.

Eventually, because Mr. Borum's physical and mental condition continued to deteriorate, jail officials placed him in a detox cell, where he spent the night pounding on the door and trying to crawl through the food tray slot. At some point during Mr. Borum's three days in jail, the jail administrator called Swisher County Judge Harold Keeter, seeking permission to transfer Mr. Borum to a jail in Lubbock County where he would be able to receive appropriate medical care. The cost to Swisher County to house Mr. Borum at the Lubbock County jail would have been $80 per day. However, Judge Keeter declined to permit Mr. Borum's transfer to Lubbock County.

Mr. Borum collapsed in his cell at approximately 8:00 A.M. on February 1, 2013, struck his head, and was knocked unconscious. After the jail administrator called 911, EMS arrived and transported Mr. Borum to Swisher Memorial Hospital. He arrived at 8:30 A.M. and was given a CT scan, which revealed a subdural hematoma—a collection or pooling of blood outside of the brain. The doctors at Swisher Memorial Hospital determined that Mr. Borum needed medical care that the hospital could not provide and decided to transfer him to Northwest Texas Hospital in Amarillo. Swisher County operated two ambulances within the City of Tulia that could have been used to transport Mr. Borum to Amarillo—a drive of approximately fifty miles. However, the County had a policy requiring that one ambulance remain within the County's borders at all times. Furthermore, one of the two ambulances was inoperable. As a result, Swisher County was forced to send for an ambulance from Amarillo to take Mr. Borum to Northwest Texas Hospital. The round-trip drive took at least one hour. Upon his arrival at Northwest Texas Hospital, doctors examined Mr. Borum, determined that it was too late to save

him, and stated to members of Mr. Borum's family that if he had arrived at the hospital sooner, the doctors could have attempted emergency surgery to save Mr. Borum's life. Mr. Borum died at the hospital.

In their complaint, Plaintiffs also allege that due to the Swisher County jail's small size—it has a maximum capacity of just twenty-seven inmates—the County Sheriff and all jail officials would have known of Mr. Borum's disabilities and would have known that Mr. Borum was not receiving sufficient medical care or nutrition. Plaintiffs further allege that the County Commissioners and County Judge Harold Keeter were aware of the jail's practice of providing honey and orange juice to prisoners suffering alcohol withdrawal, but did nothing to address the problem and did nothing to provide adequate medical care to such inmates.

Plaintiffs also allege that Judge Keeter consistently failed to adequately staff the Swisher County jail. First, the Texas Commission on Jail Standards has cited the Swisher County jail for failing to meet minimum staffing requirements, leaving inmates unobserved for hours at a time, and failing to provide adequate health care to prisoners. Second, the United States Department of Labor has investigated the Swisher County jail for violations of federal labor law.

Finally, Plaintiffs allege that jail officials received no training on providing medical care to prisoners or on accommodating prisoners with mental disabilities. Although the jail administrator often asked for additional training, as well as funds to hire additional staff members, the Sheriff and Judge Keeter consistently denied such requests.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendant seeks dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For purposes of ruling on Defendant's Motion to Dismiss, the Court will divide Plaintiffs' claims into three categories: (A) the 42 U.S.C. § 1983 claim; (B) the ADA and Rehabilitation Act claims; and (C) the supplementary wrongful death and survival claims.

### A. PLAINTIFFS' § 1983 CLAIMS

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the

United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). The Fifth Circuit has held that denial of medical care to a pretrial detainee is a deprivation of due process under the Fourteenth Amendment that is actionable under § 1983. *See Fields v. City of S. Hous., Tex.*, 922 F.2d 1183, 1191 (5th Cir. 1991). Pretrial detainees, like Mr. Borum, have a Fourteenth Amendment right to be free from punishment altogether and are thus entitled "to reasonable medical care unless the failure to supply it is reasonably related to a legitimate government objective." *Id.* (quoting *Jones v. Diamond*, 636 F.2d 1364, 1377 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986)); *see also Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 244 (5th Cir. 1993).

A county or other municipality can be liable under § 1983 for its treatment of prisoners and pre-trial detainees through either of two legal theories: (i) through the unconstitutional conduct of an individual county policymaker—sometimes referred to as an "episodic act or omission"—or (ii) through a county-wide policy, practice, or custom that deprives the plaintiff of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308-09 (5th Cir. 2004). Here, Plaintiffs attempt to plead a § 1983 claim based on the denial of medical care under both of the above theories. If Plaintiffs successfully states a claim upon which relief can be granted under either theory, that is sufficient to survive a Rule 12(b)(6) motion to dismiss.

      *i.*    *§ 1983 claim based on the unconstitutional conduct of a county policymaker*

When a plaintiff attempts to plead a violation of § 1983 through the unconstitutional actions or omissions of an individual county policymaker, the policymaker's subjective intent becomes the critical factor—specifically, whether the county policymaker acted with deliberate indifference to the pretrial detainee's constitutional rights. *See Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). A county policymaker acts with the requisite deliberate indifference under § 1983 where (1) the policymaker knew about the inmate's serious medical condition and (2) nevertheless disregarded an excessive risk to the inmate's health or safety. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Stewart v. Murphy*, 174 F.3d 530, 533-34 (5th Cir. 1999).

In the context of the medical needs of prisoners, deliberate indifference can occur when "an official knows or should know that certain treatment is necessary, and he delays in providing such treatment when he reasonably should know that such delay can be hazardous." *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 & n.11 (1976)); *see also Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (finding that a plaintiff could sustain a claim for medical indifference where government officials refused to treat him or intentionally treated him incorrectly). By contrast, a defendant's mere negligent conduct, and disagreements over matters of medical judgment—such as the type of medical treatment provided and whether to provide additional treatment—are insufficient to support a finding of deliberate indifference. *See Gibbs*, 254 F.3d at 549; *Domino*, 239 F.3d at 756; *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

Here, Plaintiffs allege that Swisher County's policymakers—then-Sheriff Cody Grubb and Judge Harold Keeter—intentionally denied Mr. Borum medical care during his three days at

the Swisher County jail, leading to Mr. Borum's death on February 1, 2013. As an initial matter, Sheriff Cody Grubb and Judge Harold Keeter clearly qualify as Swisher County policymakers for purposes of § 1983 liability. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 244 (5th Cir. 1993) (describing the county sheriff as a county policymaker because he set law enforcement goals for the county and determined how those goals would be achieved); *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988) (holding that Texas county judges are policymakers under § 1983, because county judges have "numerous executive, administrative, and legislative chores" for which they have ultimate responsibility and final authority).

The facts alleged in Plaintiffs' complaint, if true, would state a cause of action under 42 U.S.C. § 1983 based on the deliberate indifference of an individual county policymaker to Mr. Borum's constitutional rights. First, Plaintiffs allege facts which suggest that County policymakers knew about Mr. Borum's serious medical condition—the first element required to prove deliberate indifference under § 1983. Plaintiffs allege that both Judge Keeter and Sheriff Grubb were aware of Mr. Borum's physical deformities because of Swisher County's small size and the community's general awareness of Mr. Borum's unfortunate circumstances. According to Plaintiffs, the Sheriff was also aware that Mr. Borum was hallucinating and suffering from DTs during his time in jail. Plaintiffs also suggests that Judge Keeter was aware of Mr. Borum's deteriorating medical condition because jail officials had asked Judge Keeter for permission to transfer Mr. Borum to a jail in Lubbock County where he would be able to receive proper medical treatment and adequate nutrition, given the dietary limitations imposed by Mr. Borum's feeding tube.

Second, Plaintiffs have alleged facts which suggest that county policymakers disregarded an excessive risk to Mr. Borum's health and safety—the second element required to prove

deliberate indifference under § 1983. Plaintiffs allege that Judge Keeter and Sheriff Grubb completely failed to provide Mr. Borum with medical care, despite the fact that he was suffering from alcohol withdrawal, hallucinations, and DTs. Jail officials also failed to provide Mr. Borum with necessary nutritional supplements despite the fact that Mr. Borum's family brought the supplements to the jail for him. Plaintiffs also allege that Judge Keeter was aware that the County jail's standard treatment for alcohol withdrawal was honey and orange juice, rather than actual medical treatment. Finally, Plaintiffs allege that Judge Keeter refused to permit jail staff to transfer Mr. Borum to the Lubbock County jail where he could receive needed medical care, despite knowing of Mr. Borum's rapidly deteriorating condition. Such alleged conduct, if true, amounts to an intentional denial of medical care—and not simply negligence or disagreement regarding matters of medical judgment, as the Defendant argues. *See Lawson v. Dall. Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (upholding district court's findings that jail officials acted with deliberate indifference to the medical needs of a prisoner where the officials were aware of the prisoner's specific medical needs, where they were told to provide certain medical care to the prisoner, and where they nevertheless failed to provide such care). Plaintiffs have pled facts which would, if true, state a valid cause of action under § 1983 sufficient to survive a Rule 12(b)(6) motion to dismiss.

    ii. *§ 1983 claim based on a county policy, practice, or custom*

In the alternative, Plaintiffs argue that Defendant is liable under § 1983 because it has a policy, practice, or custom that violated Mr. Borum's rights under the Fourteenth Amendment. To prevail on a § 1983 claim based on county policies and practices, a plaintiff must show (1) that there is a policymaker; (2) that the policymaker adopted or executed an official policy; and

(3) that there was a violation of plaintiff's constitutional rights whose moving force was the policy or custom. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

1. Element 1: a policymaker

Under § 1983, "[t]he 'policy maker' prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority." *King v. City of Pearl River*, CIV.A. 08-4708, 2010 WL 2651645, at *3 (E.D. La. June 28, 2010) (citing *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). As discussed earlier, both Sheriff Cody Grubb and County Judge Harold Keeter qualify as county policymakers under § 1983. *See Colle v. Brazos Cnty. Tex.*, 981 F.2d 237, 244 (5th Cir. 1993); *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988). Plaintiff has pled sufficient facts to satisfy the "policymaker" prong.

2. Element 2: an official policy adopted or executed by the policymaker

Courts have recognized two types of official policies for § 1983 purposes. First, an official policy can be "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Colle*, 981 F.2d at 244-45 (quoting *Webster*, 735 F.2d at 841). Second, an official policy could also be "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). However, the mere fact that harm resulted from some interaction with a governmental entity does not permit the inference of an official policy under § 1983. *See Colle*, 981, F.2d at 245. Instead, to

survive a motion to dismiss under Rule 12(b)(6), the plaintiff must specifically identify each policy which allegedly caused the constitutional violations. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 579-80 (5th Cir. 2001); *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("[t]he description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts").

Here, Plaintiffs have specifically identified and described five policies of Swisher County which contributed to the constitutional violations alleged in this case: the "Honey and Orange Juice" policy, the "Failure to Staff the Jail" policy, the "No Policy Regarding Medical Care" policy, the "Inadequate Training" policy, and the "No Ambulance" policy. *See* Pls.' Resp. to Def.'s Mot. To Dismiss 5-6, ECF No. 10. Within the complaint, Plaintiffs detail specific facts alleging the existence of each of these five policies. First, Plaintiffs state that Swisher County had a policy of providing honey and orange juice to prisoners suffering from alcohol withdrawal, rather than actual medical treatment. Second, Plaintiffs allege that the County had a policy—effectuated by Judge Keeter—of failing to adequately staff the County jail, thus leaving inmates unobserved for hours at a time. Plaintiffs support this allegation with evidence that the Texas Commission on Jail Standards has cited Swisher County for failing to safely supervise detainees. Third, Plaintiffs allege that Swisher County has failed to establish a policy regarding the provision of medical care to prisoners. Such a failure to adopt a policy can be the basis for § 1983 liability where the omission was the result of deliberate indifference to the obvious likelihood that failure to adopt a policy would lead to the deprivation of constitutional rights. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245-46 (5th Cir. 1993); *Estate of Schroeder v. Gillespie Cnty.*, A-12-CA-1139-SS, 2014 WL 2505691, at *10 (W.D. Tex. June 2, 2014).

Fourth, Plaintiffs allege that Swisher County had a policy of providing inadequate training to their jail staff—specifically, a failure to provide training on giving medical care to prisoners, accommodating prisoners with disabilities, and treating prisoners experiencing alcohol withdrawal. Plaintiffs allege that Judge Keeter regularly refused to provide the County jail with the resources it needed to conduct such trainings. Finally, Plaintiffs allege that the County had a policy requiring one ambulance to remain within County borders at all times. Plaintiffs state that the County was aware that one of the two ambulances was inoperable, thus delaying medical care any time a prisoner was required to be transported outside of the County. Plaintiffs have pled sufficient facts to satisfy the "official policy" prong. *See Colle*, 981 F.2d at 245 (holding that plaintiff pled the existence of two official policies sufficient to survive a Rule 12(b)(6) motion to dismiss where plaintiff alleged that the county had a policy of (1) failing to monitor pretrial detainees and (2) failing to staff the jail with officials who had the authority to transfer inmates to a medical facility).

3. Element 3: a violation of plaintiff's rights caused by the policy

To satisfy the third element of a § 1983 claim based on a municipality's unconstitutional policy or practice, a plaintiff must prove (1) culpability and (2) a direct causal link between the municipal policy and the constitutional deprivation. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 580 (5th Cir. 2001). Establishing culpability under § 1983 requires proof that either (1) the official policy was unconstitutional or (2) that the official policy was "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *King v. City of Pearl River*, CIV.A. 08-4708, 2010 WL 2651645, at *3 (E.D. La. June 28, 2010) (quoting *Piotrowski*, 237 F.3d at 579).

12

Defendant argues that Plaintiffs have failed to establish such culpability because they have failed to show an underlying constitutional violation—specifically, deliberate indifference to Mr. Borum's medical needs. However, as discussed above in section (A)(i), Plaintiffs have alleged sufficient facts to successfully plead deliberate indifference on the part of the County. The deliberate indifference standard in the context of § 1983 claims based on official municipal policies is less stringent than the deliberate indifference standard used for § 1983 claims based on the isolated actions of individual policymakers. *See Lawson v. Dall. Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002). Whereas the deliberate indifference standard for the actions of individual policymakers requires subjective awareness of the inmate's serious medical condition, *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006), the deliberate indifference standard for the official policy or practice § 1983 claim is objective, *Lawson*, 286 F.3d at 264. It asks what the policymaker "*should have known*, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Id.* (emphasis added) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).

Here, Plaintiffs allege that Defendant adopted five separate policies that display deliberate indifference to Mr. Borum's Fourteenth Amendment right to adequate medical care as a pre-trial detainee. Specifically, Plaintiffs allege that Defendant had a policy of providing honey and orange juice to inmates experiencing alcohol withdrawal, rather than actual medical care; that Defendant had a policy of consistently understaffing the jail and leaving prisoners unobserved for long periods of time; that Defendant lacked a policy of providing medical care to inmates; that Defendant had a policy of failing to train jail staff on providing medical care to inmates or accommodating inmates with disabilities; and that Defendant had a policy requiring that one ambulance always remain within County limits despite the fact that the County only had

two ambulances and one was frequently inoperable. For the reasons discussed above in section (A)(i), Plaintiffs have pled the existence of specific County policies which would, if true, establish the deliberate indifference necessary to prove Defendant's culpability under § 1983. *See Lawson v. Dallas Cnty.*, 286 F.3d 257, 263-64 (5th Cir. 2002) (holding that municipality maintained its official policies with deliberate indifference to plaintiff's constitutional rights because it "should have been aware of the danger its policies posed to [plaintiff]").

Finally, Plaintiffs' allegations suggest a direct causal link between the policies enacted by the County and the constitutional violations suffered by Mr. Borum. The alleged policies resulted in a denial of medical care and adequate nutrition to Mr. Borum, leading to his death on February 1, 2013 when he collapsed and struck his head. In sum, Plaintiffs have alleged sufficient facts which would, if true, state a valid cause of action under 42 U.S.C. § 1983 for Fourteenth Amendment violations. Defendant's Motion to Dismiss is denied as to Plaintiffs' § 1983 claims.

## B. *PLAINTIFFS' ADA AND REHABILITATION ACT CLAIMS*

In addition to their § 1983 claims, Plaintiffs allege violations of the Americans with Disabilities Act ("ADA") (codified at 42 U.S.C. §§ 12101 et seq.) and the Rehabilitation Act (codified at 29 U.S.C. §§ 701 et seq.). Both the ADA and the Rehabilitation Act require public entities—or private entities receiving federal funding—to provide reasonable accommodations to assist disabled person in accessing public programs and services. *See* 42 U.S.C. § 12112(b)(5)(A); *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011). Establishing a prima facie case of discrimination under the ADA requires the plaintiff to prove (1) that he is a qualified individual under the ADA; (2) that he is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a

14

public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

The Rehabilitation Act is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the Rehabilitation Act applies to any federally funded programs and activities, whether public or private. *See Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Claims under both Acts are analyzed similarly. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Kemp*, 610 F.3d at 234 ("[t]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts"). Thus, the Court will treat Plaintiffs' ADA and Rehabilitation Act claims coextensively and will analyze them together, as though they were a single claim.

For purposes of their Motion to Dismiss, Defendant admits that Plaintiffs have pled facts sufficient to satisfy the first two elements of an ADA/Rehabilitation Act claim—specifically, (1) that Mr. Borum is disabled and is thus a qualified individual under the ADA, and (2) that prison medical care is a program or service for which a public entity is responsible. Thus, the focus of Defendant's Motion to Dismiss is on the third element of an ADA claim: whether Mr. Borum was discriminated against by reason of his disability.

Courts have universally interpreted the third element of an ADA claim—discrimination by reason of plaintiff's disability—to require a showing of intentional discrimination on the part of the defendant. *See, e.g., Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("[a] plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination"); *Meagley v.*

15

*City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011) ("[e]very circuit court to address the issue . . . has reaffirmed that intentional discrimination must be shown to recover compensatory damages"). However, there is significant disagreement among the circuit courts as to the definition of intentional discrimination in the context of the ADA. A majority of circuits have held that intentional discrimination can be proved by showing that the defendant acted with deliberate indifference to the strong likelihood of a violation of the ADA or Rehabilitation Act. *See, e.g., Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 194, 198 (3d Cir. 2013); *Meagley*, 639 F.3d at 389; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012).

But the Fifth Circuit has declined to follow the majority approach, specifically noting that "[t]here is no 'deliberate indifference' standard applicable to public entities for purposes of the ADA or the RA." *Delano-Pyle*, 302 F.3d at 575. Although the Fifth Circuit acknowledged that intentional discrimination is required under the ADA, it has repeatedly declined to provide a definition of intentional discrimination, other than to say that the definition does not involve deliberate indifference. *See id.*; *Frame v. City of Arlington*, 657 F.3d 215, 231 n.71 (5th Cir. 2011) ("[w]e express no opinion as to whether (or when) a failure to make reasonable accommodations should be considered a form of intentional discrimination").

Both Plaintiffs and Defendant use this ambiguity in the Fifth Circuit's discussions of intentional discrimination to present a somewhat distorted picture of the law. First, Defendant appears to suggest that intentional discrimination under the ADA requires a showing of animus or ill will toward the disabled individual, citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,

16

280 F.3d 98 (2d Cir. 2001), which held that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability," *id.* at 112. However, as Plaintiffs accurately observe, *Garcia* appears to have been implicitly overruled by *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (holding that intentional discrimination under the Rehabilitation Act does *not* require personal animosity or ill will, but rather merely requires a showing of deliberate indifference to likely violations of federal law). Although *Loeffler* involves the Rehabilitation Act and *Garcia* the ADA, district courts in the Second Circuit have treated *Loeffler* as overruling *Garcia*. *See Gershanow v. Cnty. Of Rockland*, 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (citing *Loeffler* for the proposition that deliberate indifference is the standard for intentional discrimination under the ADA and *not* personal animosity or ill will). Defendant's argument that intentional discrimination requires a showing of animosity or ill will is unpersuasive.

Second, Plaintiffs argue that the proper standard for intentional discrimination under the ADA is deliberate indifference to the disabled individual's need for a reasonable accommodation. However, as discussed above, the Fifth Circuit has explicitly stated that there is no deliberate indifference standard under the ADA and the Rehabilitation Act. *See Delano-Pyle*, 302 F.3d at 575. Plaintiffs' suggestion to the contrary is unpersuasive.

Ultimately, the parties' arguments—regarding whether to apply a deliberate indifference standard or an animus/ill will standard—are largely superfluous. Even with that issue unresolved, the Fifth Circuit has made it clear that a defendant's failure to make reasonable accommodations to the needs of disabled persons can constitute intentional discrimination under the ADA and the Rehabilitation Act. *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672

(5th Cir. 2004); *see also Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (noting that Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion"). This principle has been extended to ADA claims in the prison context, where "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against [a] prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006).

In their complaint, Plaintiffs allege numerous facts showing that Defendant failed to make reasonable accommodations for Mr. Borum's unique medical needs—medical needs that arose because of his disability. Plaintiffs first allege that Defendant failed to reasonably accommodate Mr. Borum's disabilities when jail officials refused to provide him with the liquid diet that was required by his feeding tubes, and instead fed him a mixture of honey and orange juice—Mr. Borum's only nutritional sustenance for the three days he spent in the Swisher County jail. Plaintiffs also allege that Defendant completely failed to provide Mr. Borum with the medical care necessary to treat Mr. Borum's disabilities, despite the fact that his disabilities were noted by the intake officer at the time of his incarceration and despite the fact that jail officials were aware that he was suffering from hallucinations, alcohol withdrawal, and DTs. Plaintiffs also allege that County Judge Harold Keeter declined to permit Mr. Borum's transfer to a jail in Lubbock County where he could receive the medical treatment he needed, because the $80 per day charge was too expensive.

Such factual allegations are sufficient to state a claim for intentional discrimination under the ADA and the Rehabilitation Act "because the lack of an accommodation may cause the

disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy*, 2006 WL 2331055, at *7; *see also Wright v. Tex. Dep't of Criminal Justice*, 2013 WL 6578994, at *4-*5 (N.D. Tex. Dec. 16, 2013) (denying defendant's Rule 12(b)(6) motion to dismiss on plaintiff's ADA claims where plaintiff alleged facts sufficient to plead intentional discrimination—specifically, defendant's failure to provide reasonable accommodations to a suicidal prisoner who later killed himself). Mr. Borum's death on February 1, 2013 certainly suggests that he suffered more pain and punishment than non-disabled prisoners. Defendant's Motion to Dismiss is denied as to Plaintiffs' ADA and Rehabilitation Act claims.

### C. PLAINTIFFS' WRONGFUL DEATH AND SURVIVAL CLAIMS

Defendant finally asserts that Plaintiffs have pled state law wrongful death and survival claims in their complaint and that these claims are barred by the doctrine of sovereign immunity. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998) ("[u]nder the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act waives immunity"). Furthermore, Defendant argues that the Texas Tort Claims Act does not waive sovereign immunity in this case because the conduct at issue did not involve "the operation or use of a motor-driven vehicle" or "a condition or use of tangible personal or real property." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

Contrary to Defendant's contentions, Plaintiffs do not assert any stand-alone state law claims in their complaint that would be barred by the doctrine of sovereign immunity. The wrongful death and survival claims are listed in the "Damages" section of the complaint and are merely part of the remedies that Plaintiffs seek for their § 1983, ADA, and Rehabilitation Act claims. The Fifth Circuit has held that 42 U.S.C. § 1988 incorporates state law wrongful death

19

and survival remedies under § 1983, thus allowing the surviving relatives of an individual killed as a result of a § 1983 violation to recover for their own injuries arising out of the wrongful death. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 390-91 (5th Cir. 1992). Because the wrongful death and survival remedies arise from § 1983 rather than from state law, the Texas Tort Claims Act does not operate to immunize Defendant from liability. *See Brown v. Wichita Cnty., Tex.*, CIV.A. 7:05-CV-0108O, 2009 WL 2393821, at *4 (N.D. Tex. Aug. 4, 2009), *aff'd sub nom. Brown v. Bolin*, 500 F. App'x 309 (5th Cir. 2012) ("if a state wrongful death claim is brought in conjunction with a section 1983 action, the county is no longer immune, as any attempt to provide immunity over and above those already provided in section 1983 directly violates federal law"). Defendant's Motion to Dismiss is denied as to the wrongful death and survival remedies that Plaintiffs seek incident to their § 1983 claims.

## CONCLUSION

Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Signed this the ____ day of September, 2014.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE